NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0239n.06
Filed: April 4, 2006

No. 05-1326

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOSEPH GORMLEY, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| PRECISION EXTRUSIONS, INC. | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee.* | ) | |

BEFORE:    COLE, GILMAN, and FRIEDMAN,[*] Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.** Defendant Precision Extrusions, Inc. ("Precision"), an Illinois corporation located in Bensenville, Illinois, manufactures custom aluminum extrusions. Plaintiff Joseph Gormley was an independent sales representative for Precision. The record indicates that Gormley and the president of Precision, Rich Ziehm, entered into a verbal agreement in 1991. The crux of the agreement was that Gormley would work as independent contractor for Precision for a six-month trial period. Gormley and Ziehm agreed that Gormley would be paid a 5% commission for all the business that he generated in his territory, which was to be the entire state of Michigan, for as long as he stayed with the company and as long each customer from Gormley's territory who placed an order during his representation of Precision continued to do business with

_____

[*]Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

the company. At no point during the meeting with Ziehm did Gormley ask that the terms of the verbal agreement be placed into writing, nor did they discuss whether Gormley would continue to receive commissions in the event that the verbal agreement was terminated. At the end of that six-month period, on January 20, 1992, Precision sent Gormley a letter expressing its desire to retain Gormley permanently.

In the course of his representation of Precision, Gormley contacted and worked with Trelleborg, a parts-supplier to the automotive industry. In the fall of 1994, Precision secured an agreement for business and a blanket purchase order from Trelleborg. It quickly became apparent that the Trelleborg contract would yield smaller profit margins than Precision normally received. Gormley testified that Ziehm assured Gormley that he would continue to receive 5% commission on the Trelleborg account, despite the lower profit margin.

In 1999, Trelleborg approached Precision with a request for a part that was "larger than normal." Gormley urged Ziehm to fill the order. Precision began producing the requested part in 2000. After two months of production, Trelleborg notified Precision that the part was defective. Because Precision incurred costs associated with repairing the defective product, Ziehm asked Gormley to take a reduction in his commission, from 5% to 3%, during the period from July 1, 2001 until July 1, 2002.

Gormley also represented Precision in dealings with Telex, a company that makes loud-speakers. Gormley's contact at Telex was located in Buchanan, Michigan. Telex had operations in other areas of the country, however, including operations in Arkansas and Minnesota. In August 2001, Precision provided quotes to Telex for parts related to aluminum speaker supports. In

December 2001, Gormley learned that Telex intended to move the entire company to Minnesota.

Gormley testified that he and Ziehm agreed that Gormley's commission would be "a continuation

of the same arrangement," despite the fact that Telex moved out of his territory.

In May 2002, Ziehm passed away. David Riley, a member of Precision's Board of Directors,

took over as President and Chief Executive Officer. In July 2002, Gormley received a proposed

agreement from Riley, entitled "Manufacturer-Agent Contract." On July 10, 2002, Gormley emailed

Riley with his concerns regarding the contract. In mid-July, Gormley learned that James Eckert

would be taking over as Precision's president. Gormley and Eckert corresponded over email

regarding the terms of the written agreement. After a meeting of the sales representatives, Gormley

signed a modified version of the written agreement. The new contract did not govern treatment of

the Telex account. Furthermore, it did not specify the commissions to be paid to sales

representatives other than to state that the maximum commission rate would be 5%. Finally, the

new contract entitled representatives to commissions on products scheduled to ship within 60 days

of the notice of termination and required a 60-day notice period in the event of termination.

By August 2000, Telex had moved its entire operation to Minnesota. In December 2002,

Eckert transferred the Telex account to another representative. Gormley testified that the last

commission he received on the Telex account related to the September shipment; he did not receive

commissions on the October or November shipments.

On January 1, 2003, Eckert implemented a sliding-scale commission, whereby the

commissions on sales over a certain dollar amount would be reduced below 5%. Gormley asked for

a straight 4% commission on the Trelleborg account. Eckert agreed to the 4% commission. Gormley then asked for 4.5% commission, to which Eckert agreed.

Eckert testified that he observed Gormley during a meeting with Trelleborg representatives, which took place in August 2002. Eckert testified that Gormley was aggressive and elicited angry responses from the Trelleborg representative. Eckert also received negative feedback regarding Gormley from Precision's engineers, quality control manager, and vice president of operations. After a March 19, 2003, meeting with the Trelleborg representatives, Eckert informed Gormley that Gormley would no longer be representing Precision. On March 20, 2003, Eckert sent Gormley a letter that memorialized their conversation, and terminated Gormley. Gormley emailed Eckert on March 26, 2003, indicating that he would not represent Trelleborg during the 60-day notice period.

Gormley testified that after termination, he did not receive the outstanding commissions due to him for his work on the Telex account or the Trelleborg account. He testified that he received a check in late March as commission for the invoices collected through January or February 2003, but that Precision stopped payment on the check. Gormley testified that he received another check in June, also for commissions earned through February, but that he was not paid for any commissions earned after February. Thus, Gormley filed suit in the Eastern District of Michigan. After numerous amended complaints, Gormley ultimately alleges that: (1) Precision breached its verbal agreement with Gormley insofar as it refused to let Gormley represent Trelleborg and Telex; (2) Gormley is entitled to post-termination commissions for life under the verbal agreement and the Michigan and Illinois procuring cause doctrines; and (3) the written agreement is unenforceable under the Illinois and Michigan Sales Representative Acts. Both Precision and Gormley filed motions for summary

judgment. The district court denied Gormley's motion, granted Precision's motion, and dismissed the case.

We review a district court's grant of summary judgment *de novo*. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005). We have reviewed the record and the parties' submissions. For substantially the same reasons set forth in the district court's comprehensive opinion dated January 6, 2005,[1] we affirm the grant of summary judgment.

Gormley also argues that the district court erred in denying his request to amend his complaint for a fourth time in its January 28, 2005 order. We review a district court's order denying a plaintiff leave to file an amended complaint for abuse of discretion. *Leary v. Daeschner*, 349 F.3d 888, 904 (6th Cir. 2003). We have repeatedly held that allowing amendment after the close of discovery creates significant prejudice. *See Leary*, 349 F.3d at 907; *Duggins v. Steak "N Shake, Inc.*, 195 F.3d 828, 835 (6th Cir. 1999); *Moore v. City of Paducah*, 790 F.2d 557, 560 (6th Cir. 1986). The district court concluded that it would be improper to allow yet another amendment at such a late stage, given that discovery had long since been completed and the case was fully briefed on cross-motions for summary judgment. Such a conclusion is well within the discretion of the district court, and no abuse of that discretion occurred here.

---

[1]The district court did not address Gormley's claim that Precision violated the Illinois and Michigan Sales Representative Acts insofar as it failed to pay his commissions in a timely fashion. This claim fails for the same reasons that his breach of contract claim fails. Gormley insists that he has a right to the contested commissions, a predicate for a claim under both states' acts, under the verbal agreement. As the district court correctly determined that the written agreement governs the parties' relationship, this claim must fail.

For the foregoing reasons, we affirm the district court's order granting summary judgment

to Precision, and denying Gormley leave to amend his complaint for the fourth time.